UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LINDA S. RIPLEY,

      Plaintiff;

      v.

DISTRICT OF COLUMBIA,          CIVIL ACTION No.: 06-01705 (EGS)

HEATHER STOWE,

BRENDA DONALD,

UMA AHLUWALIA;

      Defendants.

## AMENDED COMPLAINT

1.      This case concerns violations of the Americans with Disabilities Act (ADA),

Rehabilitation Act, District of Columbia Human Rights Act, and the District of

Columbia Whistleblower Protection Act.   Plaintiff seeks declaratory and injunctive

relief, damages, attorneys' fees and costs.

## JURISDICTION

2.      This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and

1343(a) and (b), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).  This

action arises, in part, under the Americans with Disabilities Act and the Rehabilitation Act.

## VENUE

3.      The events described herein predominately took place in Washington, D.C.; venue is therefore proper pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

4.      Plaintiff requests a jury trial on all matters that can be decided by a jury.

## PARTIES

5.      Plaintiff Linda Ripley is an adult resident of the State of Maryland.  Ms. Ripley is presently employed by the District's Child and Family Services Agency (CFSA).  Ms. Ripley has a serious vision impairment that has rendered her legally blind and requires accommodations in order to perform her job.

6.      Defendant District of Columbia ("District") is the government of the District of Columbia.

7.      The District of Columbia's Child and Family Services Agency ("CFSA"), a cabinet-level agency of Defendant District of Columbia, is charged to administer the child welfare support system and to ensure the safety and well being of the children

residing within the District of Columbia.  CFSA is subject to the ongoing jurisdiction of this Court pursuant to the terms of a Consent Decree entered in a class action lawsuit brought by and on behalf of all children subject to the authority of CFSA.   CFSA receives federal funding to support its work.

8.      At all times relevant to this Complaint, Defendant Heather Stowe was an employee of the District of Columbia.  Defendant Stowe was Plaintiff's immediate supervisor.  She is being sued in her individual capacity.

9.      At all times relevant to this Complaint, Defendant Brenda Donald (a/k/a Brenda Donald Walker) was the Director of CFSA or Deputy Mayor.   Defendant Walker was involved in decisions and actions taken that are the subject of this litigation.  She is being sued in her individual capacity.

10.      At all times relevant to this Complaint, Defendant Uma Ahluwalia has been employed as either the Deputy Director or Interim Director of CFSA.  Defendant Ahluwalia was involved in decisions and actions taken that are the subject of this litigation.   She is being sued in her individual capacity.

## FACTS COMMON TO ALL COUNTS

11.     In 1994, Plaintiff Linda Ripley was hired as a Social Worker by the District's Department of Human Services Child & Family Services Division, which is now CFSA. At the time of Plaintiff's hiring, the District was aware of her vision impairment.

12.     At all times relevant to this Complaint, each of the individual Defendants was aware of the Plaintiff's vision impairment disability and knew that the Plaintiff required accommodations in order to perform her job.

13.     In approximately 1999, CFSA assigned Cynthia Tibbs to provide clerical support services for the Plaintiff.  Ms. Tibbs was provided by CFSA, in part, to accommodate the Plaintiff's need for assistance with work-related tasks due to her disability.

14.     In 2004, Ms. Ripley was promoted to the position of Program Manager in the Child Protective Services (CPS) Administration.  The Administrator for CPS was Defendant Heather Stowe.  Ms. Stowe was the Plaintiff's immediate supervisor.

15.     In January 2005, Defendant Stowe reassigned Plaintiff's clerical assistant leaving the Plaintiff without any individualized clerical support that could provide necessary accommodations.

16.    In 2005, the Plaintiff was informed that CFSA was going to change to an internet-based computer system.   Plaintiff raised concerns to CFSA managers and contractors that the new internet-based systems would need to accommodate her and others with vision impairments by enabling the use of screen reading software.

17.    Starting in April 2005, CFSA changed to an internet based e-mail system.   The changes did not include a suitable accommodation that would permit the Plaintiff to access the new system through screen reading software.

18.    The Plaintiff informed Defendant Stowe that she could not adequately access the new system.    In addition, the Plaintiff spoke to various agency officials who could provide new software or other accommodations that would allow the Plaintiff reasonable access to the agency's computer network.

19.    As a result of the changes that moved the agency's major computer systems to internet-based applications, the Plaintiff was unable to access the PeopleSoft system and internet-based e-mail, and later, the FACES.NET system.   FACES.NET is CFSA's client and services database covering almost every aspect of the agency's work.   PeopleSoft is a personnel management software system that allows employees to interface with personnel records.   The Plaintiff was cut off from major portions of the agency's internet-based computer systems and was being offered no accommodation to address

*Amended Complaint*                                   *Page* 5

this serious problem.

20.     Since February 2006, Plaintiff has be unable to access the FACES.NET system. CFSA has not provided any accommodation that has enabled the Plaintiff to regularly access FACES.NET.

21.     In addition, training for the new computer systems has not been provided in a manner that accommodates the Plaintiff's serious vision impairment.  Consequently, the Plaintiff has not significantly benefitted from training that has been provided by CFSA.

22.     At the Plaintiff's request, CFSA converted her e-mail setup to non-internet based system.  While this change made it possible for an accommodation for e-mail to be provided, no training was provided on the specifics of the new e-mail software. Plaintiff sought assistance from Columbia Lighthouse for the Blind to provide her with training on the new e-mail software.

23.     During the period April 2005 though the present, and following her disclosures that she needed to be accommodated regarding the changes in CFSA's computer system, the Plaintiff was subjected to an increasingly hostile work environment.

24.    In particular, the Plaintiff was: (a) denied routine training; (b) required to get permission from Defendant Stowe before authorizing any removals when she served as the on call program manager; ( c) required to check in with Defendant Stowe if she was going to be away from her office for more than ten to fifteen minutes; (d) given assignments without adequate managerial support or time to prepare; (e) removed from key assignments and given work inconsistent with her position as a Program Manager; (f) given assignments via e-mail when Defendant Stowe was aware that the Plaintiff did not have ready access to the new e-mail system; and (g) was informed by other CFSA staff that they were experiencing a "backlash" from Defendant Stowe when they interacted with the Plaintiff.

25.    In addition, Plaintiff was assigned the task of providing training and supervision for social worker Gregory Woods.  The Plaintiff created a plan of action and worked closely with Mr. Woods in order to help improve his performance.  Despite Mr. Woods progress, the Plaintiff was told by Defendant Stowe to "find a way to get rid of him." Plaintiff would not follow Defendant Stowe's illegal order to fabricate a justification to terminate Mr. Woods.

26.    On or about August 8, 2005, and as a result of the difficulties created by Defendant Stowe's conduct, Plaintiff filed a formal grievance with CFSA management outlining the issues described in the previous paragraphs.

*Amended Complaint*                    *Page* 7

27.     Defendant Ahluwailia refused to investigate the issues raised in the Plaintiff's grievance and informed the Plaintiff that she did not have a right to file a formal grievance.

28.     On or about August 29, 2005, Defendant Ahluwailia held a meeting with the Plaintiff and Defendant Stowe to address the issues the Plaintiff had raised.   A tentative plan of action and agreement to work together was proposed.

29.     Following the August 29 meeting, Defendant Stowe continued to demean and act hostilely toward the Plaintiff.   Withing a few days, the Plaintiff informed the Human Resources office and Defendant Ahluwailia that she could not continue to endure the hostile and demeaning work environment under Defendant Stowe.

30.     Subsequently, Defendant Ahluwailia decided to move both the Plaintiff and Defendant Stowe into different positions.  Plaintiff was demoted from Program Manager to Supervisory Social Worker and moved to the Placement Administration. The demotion did not effect the Plaintiff's salary immediately, but it placed her on a track that provided less opportunity for salary increases.  In addition, the Plaintiff's career track has been significantly and negatively altered.

31.     Although the Plaintiff had expressed her need to escape the harassment of Defendant Stowe, she had not expected to be moved into a cubicle with no natural light and placed in charge of four clerical staff.  As Program Manager, the Plaintiff had supervised as many as sixty social workers with advanced degrees.

32.     Once the Plaintiff learned that Defendant Stowe would be transferred, Plaintiff requested that she be permitted to stay in her position as Program Manager.  Defendant Ahluwalia refused to keep the Plaintiff in her position and referred her to CFSA Human Resources.  The Human Resources staff declined to take any action.

33.     Following her demotion, Plaintiff again requested that the CFSA Human Resources office investigate the issues raised in her grievance.  No investigation was initiated by Human Resources or any other CFSA officials.

34.     On October 24, 2005, the Plaintiff filed a charge of discrimination with the D.C. Office of Human Rights.

35.     On October 28, 2005, the Plaintiff filed the same charge of discrimination with the Equal Employment Opportunity Commission.

36.     Throughout latter part of 2005, the Plaintiff warned that she would need to be accommodated with any change made in the FACES system.  Since FACES.NET was implemented in February 2006, Plaintiff has repeatedly asked and been denied accommodation that would allow her access to the system like all other employees. Specifically, Plaintiff made requests in January, February, March of 2006 and periodically thereafter seeking access to FACES.NET.  To date, Plaintiff has been denied access.

37.     On April 11, 2006, Plaintiff attended a mediation session with representatives of the District and CFSA.   CFSA refused to make any proposal or offer concerning Plaintiff's claims.

38.     Due to the extensive delay by the D.C. Office of Human Rights in investigating the Plaintiff's concerns about discrimination and retaliation, the plaintiff requested that her complaint be closed administratively to allow her to proceed to court.  In a letter dated August 10, 2006, the Director of the D.C. Office of Human Rights notified the Plaintiff that her complaint has been closed administratively with no finding made on the merits of the allegations.

39.     On September 21, 2006, the Plaintiff, through counsel, hand delivered a notice of her intent to file a lawsuit to the District's Office of Risk Management pursuant to D.C.

*Amended Complaint*                    *Page* 10

Code § 12-309.

40.     On September 27, 2006, the U.S. Department of Justice sent a right to sue letter to
the Plaintiff.

41.     On December 28, 2006, the D.C. City Council passed the "Disability Rights
Protection Act of 2006."   This legislation was designed to prompt better compliance
with the federal "Americans with Disabilities Act" and "Rehabilitation Act."   The Act's
effective date is March 8, 2007.

42.     In 2007, Plaintiff sought a promotion to a Program Manager position in her
current Administration.  Plaintiff was denied the position.  Plaintiff was denied the
position because of: (a) whistleblowing concerning Defendant Stowe and the problems
in CPS, (b) whistleblowing about the Defendants' failures to provide adequate and
timely accommodations and training, (c) the Defendants' retaliation in response to the
Plaintiff raising concerns about the discrimination she suffered due to her disability, (d)
and/or because she filed charges with DCOHR, EEOC, and the Court.

43.     On September 27, 2007, Plaintiff wrote to the CFSA Director Sharlynn Bobo to
inform her that reports that Plaintiff was being accommodated by providing her with
an assistant to help her navigate FACES.NET were incorrect.  The Plaintiff also

*Amended Complaint*                              *Page* 11

informed Director Bobo that she has not even received a security clearance to access FACES.NET.  Finally, the Plaintiff informed Director Bobo that she was unaware of any assessment of the accommodations she needs to access FACES.NET.

44.     On September 28, 2007, Director Bobo responded stating "I have asked HR to take another look at just the issue you raise about accommodations for your disability, Linda, since the broader concerns are in litigation. I don't know the history, so I've asked Ronnie Charles to take a look at what's been done. I'll get back to you within two weeks."  To date, the Plaintiff has received no further response.

45.     To date, the Plaintiff has not been informed of any actions taken by CFSA or CFSA managers to comply with the "District of Columbia ADA Compliance Program" as outlined in Section 3 (D.C. Code § 2-1431.02) of the "Disability Rights Protection Act of 2006."

**Count I - Defendant District of Columbia's**
**Violation of the Americans with Disabilities Act**
**(Failure to Provide Accommodations and Retaliation)**
**(42 U.S.C. § 1211,** *et seq.***)**

46.     Plaintiff re-alleges and restates paragraphs 1 - 45 herein.

47.     Plaintiff suffers from a disability which causes serious vision impairment. Plaintiff's disability substantially limits her life activities in many areas including working.  Plaintiff is unable to perform tasks without reasonable accommodations that will allow her to access information through audible presentation such as screen reading software that aids her in the use of computers.

48.     Defendants have failed or refused to provide reasonable accommodations regarding the Plaintiff's need for natural light in her office and have failed to accommodate her regarding her use of CFSA's computer systems.

49.     Defendants have discriminated against the Plaintiff by failing or refusing to provide reasonable accommodations that would allow her full access to computer systems and by refusing to acknowledge her need for natural light in her office space.

50.     Further, the Defendants have retaliated against the Plaintiff for raising concerns about the District's failure to accommodate.  After the Plaintiff raised her concerns about access to e-mail and other computer systems, she was subjected to harassment and was ultimately demoted from her position as a Program Manager with significant supervisory responsibilities.   To date, and despite repeated notification, the District has failed to accommodate the Plaintiff's need to access the new web-based computer systems, including FACES and PeopleSoft.

51.     Since April 2005, the District of Columbia, CFSA, and their employees have repeatedly and continuously violated Plaintiff's right to receive reasonable accommodations and have discriminated against her by refusing to provide timely, reasonable accommodations and training.

52.     Moreover, since April 2005, the Plaintiff has been subjected to repeated and continuous hostility and discrimination as a result of repeatedly raising concerns about the refusal to provide timely accommodations and training.  Since February 2006, the Plaintiff has not been given clearance to access to FACES.NET and has not been provided with an appropriate accommodation and training to access FACES.NET. Plaintiff is unable to compete for other positions or seek advancement within CFSA without access to FACES.NET.

53.     As a direct and proximate result of the Defendants' actions, the Plaintiff has suffered injuries including, but not limited to, lost earnings, removal from her career track, demotion, emotional distress, pain and suffering, anxiety, personal injury and other damages.

54.     Additionally, Plaintiff has incurred attorneys fees and costs of litigation.

**Count II - Defendant District of Columbia's
Violation of the Rehabilitation Act
(29 U.S.C. §§ 794, 794a)**

55.     Plaintiff re-alleges and restates paragraphs 1 - 54 herein.

56.     Plaintiff suffers from a serious vision impairment rendering her legally blind and is disabled within the meaning of the Rehabilitation Act.

57.     CFSA is an agency of the District of Columbia that receives federal funding.

58.     Plaintiff has been employed as a Program Manger at CFSA and is well qualified to perform the tasks of a Program Manager.

59.     Plaintiff was discriminated against by Defendant Stowe and other CFSA officials because of her disability and was demoted to a position of less status and responsibility.

60.     Further, the Defendants have discriminated against the Plaintiff by failing to provide accommodations which would allow the Plaintiff and other vision impaired individuals to access significant components of CFSA's computer system such as FACES.NET and PeopleSoft.

61.     As a direct and proximate result of the Defendants' actions, the Plaintiff has suffered injuries including, but not limited to, lost earnings, removal from her career track, demotion, emotional distress, pain and suffering, anxiety, personal injury and other damages.

62.     Additionally, Plaintiff has incurred attorneys fees and costs of litigation.

**Count III – Defendant District of Columbia's**
**Violation of D.C. Human Rights Act**
**(D.C. Code § 2 -1403.16)**

63.     Plaintiff re-alleges and restates paragraphs 1 - 62 herein.

64.     Plaintiff suffers from a serious vision impairment rendering her legally blind and is disabled within the meaning of the D.C. Human Rights Act.

65.     Plaintiff has been employed as a Program Manger at CFSA and is well qualified to perform the tasks of a Program Manager.

66.     Plaintiff was discriminated against by Defendant Stowe and other CFSA officials because of her disability and was demoted to a position of less status and responsibility.

67.     Further, the Defendants have discriminated against the Plaintiff by failing to provide accommodations which would allow the Plaintiff and other vision impaired individuals to access significant components of CFSA's computer system such as FACES.NET and PeopleSoft.

68.     Defendant's discrimination and retaliation has created and perpetuated a hostile work environment in that she is demeaned, humiliated, denied access to critical agency systems such as FACES.NET, and denied advancement.

69.     As a direct and proximate result of the Defendants' actions, the Plaintiff has suffered injuries including, but not limited to, lost earnings, removal from her career track, demotion, emotional distress, pain and suffering, anxiety, personal injury and other damages.

70.     Additionally, Plaintiff has incurred attorneys fees and costs of litigation.

## Count IV - Defendant District of Columbia's Violation D.C. Whistleblower Protection Act (D.C. Code §§ 1-615.51 - 1-615.58)

71.     Plaintiff re-alleges and restates paragraphs 1 - 70 herein.

72.     The Plaintiff has satisfied the notice requirements of D.C. Code § 12-309.

73.     Plaintiff made protected disclosures under the D.C. Whistleblower Protection

Act (D.C. Code §§ 1-615.51 - 1-615.58) when she raised concerns to CFSA management

that Defendant Stowe had: (a) directed her to find a way to justify Gregory Woods'

termination; (b) created a hostile work environment for the Plaintiff and other

employees; and ( c) had engaged in a course of conduct that was disruptive to the CPS

Administration.  In addition, Plaintiff raised concerns that she needed to be

appropriately accommodated regarding access to FACES.NET, e-mail and other CFSA

computer systems.

74.     As a result of Plaintiff's protected disclosures, she was subjected to retaliation

and harassment, including Defendant Stowe's communication of directions, requests,

and orders via e-mail when Defendant Stowe knew that the Plaintiff was unable to

access e-mail because she had not received an accommodation that permitted her access

to the new e-mail system.   The Defendants further retaliated against the Plaintiff by

demoting her to a position of less status and supervisory authority.  To date, the

Plaintiff has not been accommodated regarding access to major components of CFSA

computer system such as FACES.NET and PeopleSoft.

75.     Defendant's discrimination and retaliation has created and perpetuated a hostile

work environment in that she is demeaned, humiliated, denied access to critical agency

systems such as FACES, and denied advancement.

*Amended Complaint*                              *Page* 18

76.     As a direct and proximate result of the Defendants' actions, the Plaintiff has

suffered injuries including, but not limited to, lost earnings, removal from her career

track, demotion, emotional distress, pain and suffering, anxiety, personal injury and

other damages.


77.     Additionally, Plaintiff has incurred attorneys fees and costs of litigation.


### Count V - Individual Defendants' Violation of the
### D.C. Whistleblower Protection Act

78.     Plaintiff re-alleges and restates paragraphs 1 - 77 herein.


79.     The Plaintiff has satisfied the notice requirements of D.C. Code § 12-309.


80.     Plaintiff made protected disclosures under the D.C. Whistleblower Protection

Act (D.C. Code §§ 1-615.51 - 1-615.58) when she raised concerns to CFSA management

that Defendant Stowe had: (a) directed her to find a way to justify Gregory Woods'

termination; (b) created a hostile work environment for the Plaintiff and other

employees; and ( c) had engaged in a course of conduct that was disruptive to the CPS

Administration.  In addition, Plaintiff raised concerns that she needed to be

appropriately accommodated regarding access to FACES.NET, e-mail and other CFSA

computer systems.

*Amended Complaint*                                    *Page* 19

81.     Individual Defendants Stowe, Walker and Ahluwailia were aware that Plaintiff's right to make protected disclosures  were clearly established by law.  Despite this knowledge, Defendants Stowe, Walker and Ahluwailia took action to retaliate against the Plaintiff or permitted others to retaliate against or harass the Plaintiff in violation of the D.C. Whistleblower Protection Act (D.C. Code §§ 1-615.51 - 1-615.58).

82.     Defendant's discrimination and retaliation has created and perpetuated a hostile work environment in that she is demeaned, humiliated, denied access to critical agency systems such as FACES, and denied advancement.

83.     As a direct and proximate result of the individual Defendants' actions, the Plaintiff has suffered injuries including, but not limited to, lost earnings, removal from her career track, demotion, emotional distress, pain and suffering, anxiety, personal injury and other damages.

84.     Additionally, Plaintiff has incurred attorneys fees and costs of litigation.

**COUNT VI - 42 U.S.C. § 1983**
**Equal Protection Violations**
**(All Defendants)**

85.     Plaintiff re-alleges and restates paragraphs 1 - 84 herein.

86.     Defendant District of Columbia engages in and supports customs and/or policies that discriminate against and deny equal protection to persons with disabilities, including those suffering from blindness or other significant vision impairments. These customs and policies are evidenced by repeated failures to: (a) assess the need for accommodations, (b) timely respond to requests for accommodations, (c) provide reasonable accommodations, and (d) prevent the harassment of and disability-based retaliation against persons with disabilities.

87.     Defendants Donald, Ahluwalia, and Stowe were all policy making officials within CFSA. Defendants Donald and Ahluwalia both served as Directors of the agency. Defendant Stowe served as the CPS Administrator and was given the authority to take personnel actions and make changes in personnel.

88.     Moreover, Defendant District of Columbia acted with deliberate indifference toward the rights of the Plaintiff by failing to properly train and supervise the individual Defendants and other CFSA managers to insure that persons with disabilities were treated properly. For example, the District's deliberate indifference resulted in Defendant Stowe retaliating against the Plaintiff by using her disability against her. On a number of occasions Defendant Stowe sent emails with assignments when she knew that Plaintiff did not have email access. Defendant Stowe also gave the Plaintiff ad hoc assignments with immediate or short deadlines without providing

information that was immediately accessible to the Plaintiff.   Defendants Donald and

Ahluwalia were aware of this conduct but took no meaningful action to correct the

conduct or re-train Defendant Stowe or others to insure these types of discriminatory

actions were not repeated.  In fact, Defendant Donald went on to become a Deputy

Mayor and yet took no action to correct these discriminatory practices within CFSA or

other District agencies.


89.     As a direct and proximate result of the Defendants' actions, the Plaintiff has

suffered injuries including, but not limited to, lost earnings, removal from her career

track, demotion, emotional distress, pain and suffering, anxiety, personal injury and

other damages.


90.     Additionally, Plaintiff has incurred attorneys fees and costs of litigation.


## COUNT VII - 42 U.S.C. § 1983
## First Amendment Violations
## (All Defendants)


91.     Plaintiff re-alleges and restates paragraphs 1 - 90 herein.


92.     Plaintiff has a protected property interest in her job at CFSA.

93.     Plaintiff spoke out on matters outside her duties when she reported the improper conduct of then-Child Protective Services (CPS) unit  Administrator Stowe and sought an investigation of her conduct.

94.     In addition, Plaintiff spoke out repeatedly to the Defendants and other CFSA employees and contractors about the failure to accommodate her and the failure to provide adequate and timely training.  Plaintiff's concerns went beyond her own circumstances and brought attention to the District's and CFSA's improper practices and inappropriate treatment of persons with disabilities.

95.     The matters described herein that were raised by the Plaintiff are matters of public concern.

96.     The issues the Plaintiff raised concerning Defendant Stowe and CFSA's operations pertained to the mismanagement and abuse of authority which directly impacted the morale and functioning of the CFSA unit responsible for making decisions about whether to take children away from their parents or guardians and which is responsible for investigating allegations of child abuse and neglect.  Moreover, the performance of this unit was subject to this Court's scrutiny and investigation by the Court's assigned monitor.  See *LaShawn A. v. Fenty*, Civil Action No. 89-1754.

97.     The issues raised by the Plaintiff that concerned the District's practices and treatment of persons with disabilities highlighted the mistreatment being perpetrated against the Plaintiff.  The issues raised by the Plaintiff also impact other persons working for CFSA who have a vision impairment and impact the future recruitment and hiring of persons who suffer with vision impairment.

98.     The issues the Plaintiff raised concerning accommodations and training  evidence the Defendants' violations of federal and District laws concerning the treatment and accommodation of persons with disabilities.   The Defendants and their employees or agents have reacted negatively to the Plaintiff's pursuit of her rights as a person with a disability and have retaliated and/or discriminated against her.

99.     As a result of speaking out about: (a) the failure of the Defendants to accommodate her vision impairment, (b) the impacts of the District's and CFSA's practices in the treatment of persons with vision impairments, and (c) Defendant Stowe's improper conduct and seeking to have that conduct investigated; the Plaintiff was harassed, transferred, demoted, denied accommodations for her disability, subjected to a hostile work environment, and denied advancement.

100.    Defendant District of Columbia engages in and supports customs and/or policies that discriminate against employees who exercise their rights under the First

Amendment.  Many CFSA employees are fearful of speaking out about improper or illegal conduct because they fear retaliation.  No meaningful training has been provided by the Defendants nor have the Defendants (or current CFSA managers) implemented any type of disciplinary policy that would deter retaliation for engaging in First Amendment protected activities.

101.    As a direct and proximate result of the Defendants' actions, the Plaintiff has suffered injuries including, but not limited to, lost earnings, removal from her career track, demotion, emotional distress, pain and suffering, anxiety, personal injury and other damages.

102.    Additionally, Plaintiff has incurred attorneys fees and costs of litigation.

## RELIEF REQUESTED

103.    WHEREFORE, Plaintiff Linda Ripley prays that the Court provide the following relief:

(A)    An order declaring that Defendant District of Columbia has violated the Americans with Disabilities Act, Rehabilitation Act, and/or D.C. Human Rights Act, Equal Protection Clause of the Fifth Amendment, and First Amendment;

(B)     An order declaring that the Defendants have violated the District of
        Columbia Whistleblower Protection Act (D.C. Code §§ 1-615.51 - 1-615.58);

(C)     An order declaring that individual Defendants Brenda Donald Walker,
        Heather Stowe, and Uma Ahluwailia have violated D.C. Code § 1-615.53;

(D)     An order requiring that the Defendant District of Columbia take
        appropriate disciplinary action, including the possibility of dismissal,
        against Defendants Walker, Stowe, and Ahluwailia;

(E)     An order requiring Defendant Walker to pay a civil fine of $1,000.00 for
        her violation of D.C.  Code § 1-615.53;

(F)     An order requiring Defendant Stowe to pay a civil fine of $1,000.00 for her
        violation of D.C.  Code § 1-615.53;

(G)     An order requiring Defendant Ahluwailia to pay a civil fine of $1,000.00
        for her violation of D.C.  Code § 1-615.53;

(H)     An order reinstating the Plaintiff to the position of Program Manager
        along with salary and other benefits to which she would be entitled had
        she been continuously employed;

(I)     An award to the Plaintiff of lost wages, economic, compensatory and
        punitive damages in the amounts appropriate to the proof adduced at trial
        along with prejudgment and post-judgment interest;

(J)     An award of Plaintiff's reasonable attorneys' fees, expert witness fees,
        costs and expenses; and

(K)     Such other relief as the Court or Jury may deem just or appropriate.


DATED this 12th day of December, 2007.



Respectfully submitted,


*/s/ Richard E. Condit*

_____
Richard E. Condit, Esq.
**D.C. Bar No. 417786**
1612 K Street, NW, Suite 1100
Washington, D.C.  20012
Telephone: (202) 408-0034 x. 142
Facsimile: (202) 318-3211
Email: r1condit1@earthlink.net